# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 16-0587-WS-B |
| ) | |
| CLOUD 9 VAPES, LLC, *et al.*, ) | |
|     Defendants/Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| COMCAST BUSINESS ) | |
| COMMUNICATIONS, LLC, ) | |
|     Third-Party Defendant. ) | |

# ORDER

This matter comes before the Court on third-party defendant Comcast Business Communications, LLC's Motion to Dismiss (doc. 28). The Motion has been briefed and is now ripe for disposition.

**I.    Background.**

Plaintiff, Joe Hand Promotions, Inc., filed a Complaint (doc. 1) against defendants, Cloud 9 Vapes, LLC and Gary P. Harris, alleging a single claim of "Satellite Piracy / Cable Piracy," in violation of particular portions of the Communications Act of 1934 (47 U.S.C. § 605) or the Cable Television Consumer Protection and Competition Act of 1992 (47 U.S.C. § 553). The Complaint is grounded in allegations that (i) Joe Hand held exclusive rights to license and distribute a certain Ultimate Fighting Championship telecast (the "Program") to commercial establishments throughout the United States on October 3, 2015; (ii) defendants own and operate a commercial establishment known as Cloud 9 Vapes in Mobile, Alabama; (iii) defendants did not contract with Joe Hand to broadcast the Program at Cloud 9 Vapes, and Joe Hand did not authorize defendants to air the Program at that establishment; and (iv) defendants intercepted the Program by unauthorized receipt over a cable system, then exhibited it to patrons at Cloud 9 Vapes.

Defendants filed a Third-Party Complaint (doc. 16), naming Comcast Business Communications, LLC as a third-party defendant. In that pleading, Cloud 9 and Harris alleged that they had ordered the Program from Comcast "by placing the order through the commercial account cable box provided by" Comcast, that Comcast had charged Cloud 9 and Harris for the event, and that Cloud 9 and Harris had paid Comcast for that event. (Doc. 16, ¶ 8.) According to the Third-Party Complaint, Joe Hand has alleged that Comcast "did not have authority to disseminate this pay-per-view event," but "[t]his information was not provided to third party Plaintiffs." (*Id.*, ¶ 9.) On that basis, Cloud 9 and Harris bring a Third-Party Complaint against Comcast "for defense and indemnity in any amount of judgment rendered against them" pursuant to Joe Hand's Complaint. (*Id.* at 3.)

Comcast now moves to dismiss the Third-Party Complaint on grounds that the indemnity claim does not state a claim upon which relief can be granted, and alternatively that it constitutes an improper use of the third-party pleading mechanism under Rule 14, Fed.R.Civ.P.[1]

---

[1] In briefing the Motion, both sides rely on facts outside the pleadings, which is generally not allowed in the Rule 12(b)(6) context. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "limit[] our review to the four corners of the complaint"); *Hayes v. U.S. Bank Nat'l Ass'n*, 648 Fed.Appx. 883, 887 (11th Cir. Apr. 21, 2016) ("In evaluating whether a complaint should be dismissed under Rule 12(b)(6) for failure to state a claim, a court is generally limited to reviewing what is within the four corners of the complaint.") (citations and internal marks omitted). On that basis, Comcast posits that its motion "must be treated as one for summary judgment under Rule 56." (Doc. 35, at 2.) The rule, however, is that a district court "generally must convert a motion to dismiss into a motion for summary judgment *if it considers materials outside the complaint*." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (emphasis added); *see also* Rule 12(d), Fed.R.Civ.P. Courts have discretion to exclude such materials by not considering them, and thereby to refrain from converting a Rule 12(b)(6) motion into a summary judgment motion. *See, e.g., Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings."); *Jones v. Automobile Ins. Co. of Hartford, Conn.*, 917 F.2d 1528, 1531-32 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court."); *Adams v. Homeward Residential, Inc.*, 2014 WL 460936, *2 (S.D. Ala. Feb. 5, 2014) ("It is not mandatory that the Court consider the AHMSI Letter and convert the motion into one for summary judgment simply because defendant so requested."). The Court follows that path here, and expressly declines to consider any matters outside the pleadings; therefore, Comcast's Motion is properly analyzed under Rule 12(b)(6), not Rule 56.

**II.     Analysis.**

For purposes of evaluating Comcast's Motion to Dismiss, the Court accepts as true all well-pleaded factual allegations of the Third-Party Complaint, and draws all reasonable inferences in favor of Cloud 9 and Harris. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017) ("We must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff"); *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (on Rule 12(b)(6) review, courts "accept[] the facts alleged in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor"). That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Almanza*, 851 F.3d at 1071 ("On a Rule 12(b)(6) motion to dismiss, the Court does not accept as true unwarranted deductions of fact."). Moreover, *Twombly / Iqbal* principles require a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Almanza*, 851 F.3d at 1066 ("the allegations must nevertheless state a claim for relief that is plausible – and not merely possible – on its face," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (citations omitted).

On its face, third-party plaintiffs' claim against Comcast sounds in a theory of indemnity. The critical question is whether Cloud 9 and Harris have a plausible claim for indemnity under the circumstances alleged here. It is well-settled that "[a] defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law." *Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.*, 151 F.3d 1129, 1130-31 (9th Cir. 1998).[2] In *Doherty*, which is widely regarded

---

[2] *See also Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) ("a right to contribution may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution"); *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77, 90, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (similar).

as the leading case on indemnification rights for defendants sued under the Communications Act of 1934, the Ninth Circuit examined the remedial provisions of both §§ 553 and 605 in concluding that there is "no support in the Act or legislative history suggesting that Congress intended to create a right to indemnification for violations of the Act." *Id.* at 1131.  Moreover, the *Doherty* court explained that where, as in §§ 553 and 605, "Congress has enacted a comprehensive legislative scheme, there is a strong presumption that Congress did not intend the courts to supplement the statutory remedies." *Id.*  *Doherty* likewise concluded that "this is not an appropriate case for the federal courts to recognize a federal common law right" of indemnity because "[t]here are no such unique federal interests involved in this case." *Id.*

The fact pattern pleaded by Cloud 9 is neither exceptional nor particularly unusual.  In case after case, a distributor of pay-per-view events has filed suit under §§ 553 and 605 against a bar or restaurant for exhibiting an event without permission, and the bar/restaurant has responded by bringing a third-party complaint against a cable provider, satellite provider, local promoter, or some other third party that the bar/restaurant says is actually responsible for any unwitting § 553 or § 605 violation by the bar/restaurant.  And in case after case, federal district courts around the country have adopted the reasoning articulated by the Ninth Circuit in *Doherty* in determining that neither the statute nor the federal common law creates a right to indemnity or contribution in these circumstances, such that dismissal of the third-party complaint is appropriate under Rule 12(b)(6).[3]

---

[3] *See, e.g., J & J Sports Productions, Inc. v. Argueta*, --- F. Supp.3d ----, 2016 WL 7030444, *4 (W.D. Ark. Nov. 30, 2016) ("The Court finds that Argueta's claims against Dish in the third-party complaint are an attempt to seek indemnification, and that there is no right to indemnification under federal common law or the Federal Communication Act."); *PPV Connection, Inc. v. Rodriguez*, 228 F.R.D. 99, 102 (D.P.R. 2005) ("Mejias seeks indemnity from Direct TV for its violations of the Communication Act.  However, Mejias cannot receive contribution or indemnity from Direct TV under the Communications Act."); *J & J Sports Productions, Inc. v. Suite Atlanta, LLC*, 2015 WL 12857071, *2 (N.D. Ga. Aug. 10, 2015) (finding "no federal right to indemnification" where defendant who was sued under §§ 605 and 553 brought third-party complaint for indemnity against independent promoter who aired program at defendant's lounge without authorization); *J & J Sports Productions, Inc. v. Skinner*, 2014 WL 2208166, *2 (E.D. Cal. May 28, 2014) ("Defendants move to dismiss on the grounds that the Skinners are seeking indemnity, which is not permitted against federal claims under Sections 553 and 605.  Third-party defendants are correct."); *Joe Hand Promotions, Inc. v. In Your Ear, LLC*, 2013 WL 12145860, *3  (W.D. Mo. July 26, 2013) (where defendant who was sued under §§ 553 and 605 brought third-party complaint against its commercial television (Continued)

Faced with these compelling authorities, Cloud 9 and Harris do not argue that *Doherty* and its progeny were wrongly decided. They do not suggest that there actually is a statutory right to indemnity under 47 U.S.C. §§ 553 and 605, that the legislative scheme is not comprehensive, that Congress intended a violator of § 553 or § 605 to have a right to indemnity, or that unique federal interests might favor recognizing a federal common-law right here. Instead, they muster three counterarguments in opposition to the Motion to Dismiss. First, Cloud 9 and Harris posit that a "special relationship" between Cloud 9 and Comcast gives rise to a right to indemnification. (Doc. 31, at 5.) It is correct that some courts have recognized an implied right to indemnity among tortfeasors who have a special relationship.[4] But it is also true that "[t]he party alleging a special relationship has a heavy burden of showing an implied agreement by the potential indemnitor to indemnify it." *Burnett v. A. Bottacchi S.A. de Navegacion*, 882 F. Supp. 1050, 1055 (S.D. Fla. 1994).[5] Cloud 9 and Harris have not met that "heavy burden" here.

---

provider, concluding that third-party claim "seeking indemnification and/or contribution for any violations of 47 U.S.C. §§ 553 and 605 is hereby dismissed because IYI has failed to identify the type of uniquely federal interest that implicates federal common law"); *Joe Hand Promotions, Inc. v. Himmelberg*, 2012 WL 1142939, *3 (S.D. Ohio Apr. 5, 2012) (determining that third-party plaintiff's "federal claims for indemnity and contribution fail as a matter of law" pursuant to *Doherty* reasoning where it had been sued under § 553 and § 605 and brought third-party complaint against DISH network for indemnification); *Zuffa, LLC v. Taapken*, 2012 WL 1080822, *3 n.3 (M.D. Ala. Mar. 30, 2012) ("It is noted that CTVEA appears to have the better argument when it posits that § 553, § 605 and the federal common law do not provide a right to indemnity."); *Joe Hand Promotions, Inc. v. Alvarado*, 2011 WL 1544501, *3 (E.D. Cal. Apr. 21, 2011) ("the Alvarados cannot state a claim for indemnification for the alleged violations of § 553 and § 605").

[4]  *See, e.g., Cities Service Co. v. Lee-Vac, Ltd.*, 761 F.2d 238, 240 (5th Cir. 1985) (opining that tort indemnity may be "predicated upon the relationship and duty owed between the parties," such as when "the stevedoring company and the shipowner had a special relationship"); *Maritime Overseas Corp. v. Northeast Petroleum Industries, Inc.*, 706 F.2d 349, 353 (1st Cir. 1983) ("A contractual right to indemnification is implied … when there is a generally recognized special relationship between the parties.") (citation omitted).

[5]  *See also Fidelity Nat'l Title Ins. Co. v. Radford*, 2015 WL 6958291, *7 (W.D. Va. Nov. 10, 2015) ("The party alleging a special relationship has a heavy burden of showing an implied agreement by the potential indemnitor to indemnify it. … In the contracts context, equity is more hesitant to imply an indemnity right, because if parties desired to create an indemnitor-indemnitee relationship, they could have done so expressly in the contract.") (citations and internal quotation marks omitted).

They have cited no authorities suggesting that the relationship between cable provider and cable customer is a "generally recognized special relationship" akin to a shipowner/stevedoring company relationship, an employer/employee relationship, a principal/agent relationship, a lessor/lessee relationship, or a bailor/bailee relationship. They have pleaded no factual allegations in their Third-Party Complaint demonstrating that they could not have included express indemnity provisions in their contract with Comcast had they wished. And they have identified neither well-pleaded factual allegations nor public policy considerations warranting a legal conclusion that a "special relationship" between cable provider and cable customer exists so as to justify imposition of an implied duty of indemnity (either in tort or in contract) on the cable provider. On this fragmentary showing, the Court concludes that third-party plaintiffs have not stated a plausible indemnity claim against Comcast on a "special relationship" theory.

Second, Cloud 9 and Harris maintain that one of the cases cited by Comcast, *Joe Hand Promotions, Inc. v. Himmelberg*, 2012 WL 1142939 (S.D. Ohio Apr. 5, 2012), is distinguishable because Cloud 9 "did *not* charge admission, sell food, etc." and "operat[ed] exactly as instructed by Comcast." (Doc. 31, at 6.) This argument fails because (i) it relies on facts outside the four corners of the Third-Party Complaint, which the Court has declined to consider on Rule 12(b)(6) review; and (ii) more fundamentally, the factual differences cited by Cloud 9 and Harris would make no difference in a *Doherty* analysis. The right, *vel non*, of a defendant in violation of §§ 553 and 605 to seek indemnity via third-party practice does not turn on whether the defendant sold tickets or followed instructions; to the contrary, the *Doherty* line of authorities stands for the proposition that no right of indemnity exists in this context because Congress did not intend for a violator of §§ 553 or 605 to have a right to indemnity and no unique federal interests are at stake. Those conclusions remain intact irrespective of whether the violator profited from the unauthorized broadcast or followed the instructions of its cable provider.

Third, Cloud 9 and Harris state that a "more appropriate comparison" is *Joe Hand Promotions, Inc. v. Bick*, 2014 WL 5320264 (C.D. Ill. Oct. 20, 2014). In *Bick*, the defendants owned and operated a bar that showed an ultimate fighting championship fight without authorization, so Joe Hand sued them for violations of § 553 and § 605. The defendants then brought a third-party complaint against their cable company, which promptly moved to dismiss the third-party complaint. The problems with that motion to dismiss, according to the *Bick* court, were that the movant "does not clearly articulate why it believes Bick and City Limits's third-

party complaint should be dismissed under Rule 12(b)(6)" and "does not make any arguments to show why Bick and City Limits would not be able to bring an indemnity claim." *Bick*, 2014 WL 5320264, at *2-3.[6] Thus, *Bick* is not a case rejecting the *Doherty* reasoning that has been embraced by so many sister courts in analogous circumstances; rather, *Bick* is a case in which the trial court declined to dismiss a third-party complaint for the simple reason that the movant never explained why dismissal was warranted and the court elected not to develop movant's arguments for it. *Bick* is an outlier to the unbroken line of authorities described *supra* not because that court viewed the law differently, but because the Rule 12(b)(6) motion in that case never properly presented a *Doherty* argument. As such, *Bick* is unenlightening on the particular issues raised by Comcast's Motion to Dismiss here.

### III. Conclusion.

For all of the foregoing reasons, the Court finds that the indemnity claim asserted by Cloud 9 and Harris against Comcast fails to state a claim upon which relief can be granted. Accordingly, Comcast's Motion to Dismiss (doc. 28) is **granted**, and the Third-Party Complaint is **dismissed without prejudice** pursuant to Rule 12(b)(6), Fed.R.Civ.P. This action will proceed as between Joe Hand Promotions, Inc., on one side, and Cloud 9 and Harris, on the other, in accordance with the Amended Scheduling Order (doc. 33) entered by Magistrate Judge Bivins.

DONE and ORDERED this 3rd day of July, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] Indeed, the *Bick* court took pains to delineate the threadbare nature of the motion to dismiss, commenting that "the motion is a little over two pages long and contains no citations to legal authority." *Id.* at *1.